## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| BENCHMARK RESOURCES ) <br> CORPORATION, GENTRY ) <br> CORPORATION, and SUNRISE ) <br> HOLDING, INC., ) <br>       ) <br>       Plaintiffs, ) <br>       ) <br> v.      ) <br>       ) <br> THE UNITED STATES OF AMERICA, ) <br>       ) <br>       Defendant. ) <br>       ) | No. 03-178L <br><br> Honorable Christine Odell Cook Miller |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT (AMENDED)**

Pursuant to RCFC 56(h)(2) and Order of the Court dated August 30, 2006, Plaintiffs submit an amended response to the Proposed Findings of Uncontroverted Fact submitted by Defendant in Support of its Motion for Summary Judgment.

1.  **Defendant's Proposed Finding of Fact**: Plaintiffs are Benchmark Resources Corporation and Gentry Corporation (collectively referred to herein as the "Benchmark Plaintiffs"), and Sunrise Holding, Inc. (referred to herein as Santiago"). 1st Amended Complaint.

    **Plaintiffs' Response**: Agreed.

2.  **Defendant's Proposed Finding of Fact**: Benchmark Plaintiffs hold a 50% undivided fee simple interest in approximately 7,000 acres of property lying principally in Bledsoe and

Hamilton Counties in Tennessee (the "Fee Property"). 1st Amended Complaint ¶ 8; Benchmark Resources Corp. v. United States, 64 Fed. Cl. 526, 527 (2005).

**Plaintiffs' Response**: Agreed.

3.  **Defendant's Proposed Finding of Fact**: Santiago holds a 50% undivided fee simple interest in the Fee Property. Id.

**Plaintiffs' Response**: Agreed.

4.  **Defendant's Proposed Finding of Fact**: Benchmark Plaintiffs hold a 50% undivided interest in the mineral rights on approximately 24,000 acres lying in both Hamilton County, Tennessee and Bledsoe County, Tennessee (the "Mineral Property"). Id. Both the Fee Property and the Mineral Property are collectively referred to herein as the "Wharton Property" due to their prior ownership by the Wharton family.

**Plaintiffs' Response**: Agreed.

5.  **Defendant's Proposed Finding of Fact**: Santiago holds 50% undivided interest in the mineral rights on the Mineral Property Id.

**Plaintiffs' Response**: Agreed.

6.  **Defendant's Proposed Finding of Fact**: The interests of the Benchmark Plaintiffs and Santiago in the Fee Property are limited by a timber lease held by Bowater North American ("Timber Lease"). The Timber Lease was first executed by Wharton's, Inc., the prior owner of the Wharton Property, and Hiwassee Land Co., which was later acquired by Bowater North American. (U.S. Ex. T, App. II at 553-567).

**Plaintiffs' Response**: Disagree. Plaintiffs dispute that their interests in the Fee Property are "limited" by the Timber Lease. The Timber Lease provides in pertinent part that, even during the time period of the Lease, "Lessor reserves and retains all coal, oil, gas and other

minerals and mineral rights in, on, or beneath the above described lands not heretofore granted to or reserved by third persons, but shall not develop, mine, extract, or remove the same without the prior written consent of Lessee **which shall not be unreasonably withheld** . . . ."  (U.S. Ex. T, App II at 558)(emphasis added).  The Timber Lease further is due to expire in 2047 and Plaintiffs held the reversionary interest. (Id.)

7.      **Defendant's Proposed Finding of Fact**: The Timber Lease precludes the Benchmark Plaintiffs and Santiago from strip mining the Fee Property.  Proctor 02/13/06 Depo. 111:25-112:12 (U.S. Ex. M, App. II at 446-447) ("Q.  You understood that you had no rights to [strip mine the Fee Property] from a contractual standpoint?  A.  That's true. . . ."); see also Id. at 136:1-18 (U.S. Ex. M, App. II at 449); Kwon Depo. 71:19-72:5 (U.S. Ex. R, App. II at 511-512a); Triestman Depo. 18:22-19:4  (U.S. Ex. Q, App. II at 495-496a), see also Triestman Depo. 49:5-6  (U.S. Ex. Q, App. II at 496); Cohen Depo. 81  (U.S. Ex. P, App. II at 485).

   **Plaintiffs' Response**: Disagree.  See Response to ¶6, *supra.*  Moreover, Defendant has not cited to Darold Proctor's full deposition testimony on this point.

> Q. You understood that you had no rights to [strip the property for coal] from a contractual standpoint?
> A. That's true.  But there was an alternative.
>
> Q. And what was that alternative?
> A. The alternative was there had been, Tennessee Partners and Mr. Busler had negotiated with Bowater about a 57-acre tract on the fee simple land and Bowater was making a deal—you've go the papers on it—Bowater was willing to permit that mining to continue if we bought them a certain parcel of land they wanted, and we, of course, never got to follow up with that because of everything that happened here, and we haven't talked to them since that time.

(U.S. Ex. M, App II at 447).  See also, Mr. Kwon's testimony, as cited by Defendant.

(U.S. Ex. R, App. II at 511-12a).

8. **Defendant's Proposed Finding of Fact**: The Timber Lease runs for eighty years from May 1, 1967 through 2047. Proctor 02/13/06 Depo. 111:25-112:12 (U.S. Ex. M, App. II at 450); Timber Lease (U.S. Ex. T, App. II at 556).

**Plaintiffs' Response**: Agreed.

9. **Defendant's Proposed Finding of Fact**: Plaintiffs have, to date, not determined whether similar restrictions apply to the Mineral Property. Proctor 02/13/06 Depo. 99:23-100:8 (U.S. Ex. M, App. II at 444-45):

> Q. . . . did you check to determine whether or not [Bowater] had any kind of timber interest [in the Mineral Property]?
> A. It's possible that Bowater owns some of that land.
> Q. Did your due diligence involve investigating what kinds of arrangements the fee owner might have with respect to that land, such as timber leases?
> A. No, we never had any reason to go to the surface owners because we were negotiating and purchased . . . the mineral interest ownership.

**Plaintiffs' Response**: Disagree. Defendant has improperly stated incorrect legal conclusions. Defendant has cited to deposition testimony in which its attorney questioned Mr. Proctor as to who owned the "fee simple interest" in the Mineral Property. Of course, as Defendants own the mineral rights in the Mineral Property, no one can own the fee simple interest in the Mineral Property. Plaintiffs further maintain that this proposed finding of fact is not relevant to Defendant's present motion as Plaintiffs unquestionably held a compensable property interest for the reasons set forth in their Responsive Brief.

10. **Defendant's Proposed Finding of Fact**: Plaintiff is unaware of the identity of the owners of the fee interest in the Mineral Property. Id. 99:3-5 (U.S. Ex. M, App. II at 444);

…

Proctor 02/14/06 Depo. 263:1-4 (U.S. Ex. K, App. II at 434) ("Q. . . . Do you know who owns that fee simple interest in the property where you have a mineral interest? A. No, we don't.")

**Plaintiffs' Response**: Disagree. See Response to ¶9, *supra.*

11.    **Defendant's Proposed Finding of Fact**:  The Warranty Deed witnessing the Benchmark Plaintiffs' acquisition of an interest in the Fee Property is subject to an encumbrance created by the Timber Lease. The Timber Lease is among several recorded encumbrances and exceptions to the Benchmark Plaintiffs' Warranty Deed. (U.S. Ex. A-1 (Proctor Depo. at 22 and Exh. E-2), App. I at 16, 109).

**Plaintiffs' Response**: Disagree. This proposed finding of fact refers solely to a written document, the terms of which speak for themselves. Answering further, Plaintiffs state that this proposed finding of fact is not relevant to Defendant's present motion as Plaintiffs unquestionably held a compensable property interest for the reasons set forth in their Responsive Brief.

12.    **Defendant's Proposed Finding of Fact**:  The quitclaim deed witnessing Santiago's acquisition of an interest in the Fee Property identifies the encumbrance created by the Timber Lease. (U.S. Ex. O, App. II at 468).

**Plaintiffs' Response**: Disagree. This proposed finding of fact refers solely to a written document, the terms of which speak for themselves. Answering further, Plaintiffs state that this proposed finding of fact is not relevant to Defendant's present motion as Plaintiffs unquestionably held a compensable property interest for the reasons set forth in their Responsive Brief.

13.    **Defendant's Proposed Finding of Fact**:  Since its execution in 1967, the Timber Lease has precluded, and continues to preclude, Plaintiffs from conducting surface mining on 6,500 of

the 7,000 acres of the Fee Property. The right to strip mine on the remaining 500 acres lapsed in 1977. The Timber Lease states:

> 8.1  . . . but in no even shall strip mining be permitted on said lands, except as provided in paragraph 8.2 herein.
>
> 8.2  Lessor reserves the right to stip mine for coal only on a maximum of 500 acres of the above described lands. . . . The stripping rights reserved by Lessor under this paragraph shall terminate on April 30, 1977.

(U.S. Ex. T, App. II at 558).

**Plaintiffs' Response**: Disagree. See Response to ¶6, *supra.*

14.     **Defendant's Proposed Finding of Fact**: In 1987, the entire Wharton Property was encumbered by a lease of all coal mining interests to Tennessee Partners, Inc. (the "Coal Lease"). The Coal Lease granted to Tennessee Partners, Inc. a 20 year exclusive right to conduct coal mining operations on the Wharton Property beginning on December 28, 1977. (U.S. Ex. A-4, App. I at 247-56). The Coal Lease provided that Tennessee Partners had "the right to mine, by lawful and reasonable methods, including strip mining and augering, all coal in place from the [described] property," subject to the limitations and exceptions in the Coal Lease and the Timber Lease. Id. (U.S. Ex. A-4, App. I at 249).

**Plaintiffs' Response**: Disagree. The Coal Lease was for the presumptive period of 20 years, however, this time period could have been shortened or lengthened. (U.S. Ex. U, App II at 570). During the period of the Coal Lease, the lessees were required to pay Plaintiffs minimum royalty payments of $7,680,000.00 annually. (U.S. Ex. T, App II at 572). Plaintiffs also envisioned ultimately mining the property themselves. (Exhibit "2" to Plaintiffs' Responsive Brief at 277-78; Exhibit "3" at 39-40). Unfortunately, Plaintiffs received no payments from the lessees of the Coal Lease: it did receive some

compensation from a settlement with Tennessee Partners. (Exhibit "3" to Plaintiffs' Responsive Brief at 54-56). Answering further, Plaintiffs state that this proposed finding of fact is not relevant to Defendant's present motion as Plaintiffs unquestionably held a compensable property interest for the reasons set forth in their Responsive Brief.

15. **Defendant's Proposed Finding of Fact**: The Warranty Deed witnessing the Benchmark Plaintiffs' acquisition of an interest in the Wharton Property is subject to various recorded encumbrances and exceptions, including the Coal Lease from MTB Holding Corp., et al. (a prior owner of the Wharton Property) to Tennessee Partners, Ltd., a Florida Limited Partnership, dated December 28, 1977. (U.S. Ex. A-1 (Proctor Depo. at 22 and Exh. E-2), App. I at 16, 109).

**Plaintiffs' Response**: Disagree. This proposed finding of fact refers solely to a written document, the terms of which speak for themselves. Answering further, Plaintiffs state that this proposed finding of fact is not relevant to Defendant's present motion as Plaintiffs unquestionably held a compensable property interest for the reasons set forth in their Responsive Brief.

16. **Defendant's Proposed Finding of Fact**: The attachments to Santiago's Quitclaim Deed, identifies several encumbrances on the Wharton Property. (U.S. Ex O, App. II at 467). The attachments indicate that Santiago's interest in the Wharton Property is subject to:

2. Lease Agreement, dated December 28, 1977 among MTB, an Ohio Corporation . . . as Lessors and Tennessee Partners, Ltd. a Florida limited partnership, as Lessee.

Id.

**Plaintiffs' Response**: Disagree. This proposed finding of fact refers solely to a written document, the terms of which speak for themselves. Answering further, Plaintiffs state that this proposed finding of fact is not relevant to Defendant's present motion as

Plaintiffs unquestionably held a compensable property interest for the reasons set forth in their Responsive Brief.

17. **Defendant's Proposed Finding of Fact**:  Beginning in approximately 1985, Santiago and the Benchmark Plaintiffs became embroiled in various lawsuits with the Tennessee Partners concerning the Coal Lease.  (U.S. Ex. A-1 (Proctor Depo. at 27-29, 32), App. I at 21-23, 26).  That litigation was not settled by the parties until 1989.  (U.S. Ex. A-1 (Proctor Depo. at 27-28, 36), App. I at 21-22, 36).

**Plaintiffs' Response**: Disagree.  See Response to ¶14 *supra*.

RESPECTFULLY SUBMITTED this 31st day of August, 2006.

**BENCHMARK RESOURCES CORPORATION,
GENTRY CORPORATION & SUNRISE HOLDING, INC.**

By: s/  James N. MacKinlay
James N. MacKinlay
1019 South Stapley
Mesa, Arizona  85204
Phone: (480) 898-9239
Fax: (480) 833-2175
Attorney of Record for Plaintiffs

- 9 -

**CERTIFICATE OF SERVICE**

  The undersigned certifies that on this 31st day of August, 2006, a true and correct copy of Plaintiffs' Response to Defendant's Proposed Findings of Uncontroverted Fact in Support of its Motion for Summary Judgment, was served via first class mail, postage prepaid, on Defendant's counsel of record:

    James D. Gette
    U.S. Department of Justice
    Environment & Natural Resources Division
    P.O. Box 663
    Washington, D.C. 20044


    s/  James N. MacKinlay
      James N. MacKinlay